UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHNE R. CONEY, | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiff, | | Civil Action No. 08-6151 |
| v. | : | |
| HOMESITE INSURANCE COMPANY, | : | |
| Defendants. | : | |

## OPINION

Presently before the Court is the motion of Defendant Homesite Insurance Company (hereinafter "Homesite") seeking summary judgment pursuant to Fed.R.Civ.P. 56. Homesite assumed the home owner insurance policy for Plaintiff Stephne Coney's (hereinafter "Coney") dwelling. Coney alleges that she sustained a loss in April 2006 and filed a claim with Homesite. Homesite rejected the claim and now moves for summary judgment on the theory that its policy was not in effect at the time Plaintiff sustained her loss; alternatively, Homesite argues that Plaintiff's claim is precluded by a one year limitation of action provision contained in the insurance policy. The Court has considered the written submissions of the parties, as well as the arguments advanced orally during the hearing on June 30, 2006. For the reasons expressed on the record that day, and for those that follow, Homesite's motion for summary judgment is granted.

## I. FACTS

Homesite assumed AIG's homeowners' policies, as AIG was no longer underwriting such policies, including the policy covering Coney. Ms. Coney accepted the Homesite coverage and the Homesite Policy # 30216121 was in effect from January 15,

2005 through January 15, 2006.  See Homesite Ltr. Attached to Pl. State. of Mat. Facts. In August 2005, Homesite sent Plaintiff a questionnaire to ascertain whether there was an underground oil tank on the insured dwelling, as Homesite was not providing coverage to any homeowner with an underground oil tank. Id.  Over the course of the policy period, Homesite sent Plaintiff two such questionnaires, to which she did not immediately respond. Id.  As a result, on November 22, 2005, Homesite issued a non-renewal notice to Coney. Id.

Coney eventually completed the questionnaire and returned it to Homesite along with the non-renewal notice.  Id.  It was received by Homesite on December 15, 2005, but due to an error by Homesite's processing department, the papers were processed as a request to cancel her policy.  Id.  The policy was cancelled on December 21, 2005.  In order to rectify its error, Homesite sent a renewal offer to Coney dated February 28, 2006 (Exhibit "B" May Supp. Cert.). Coney denies ever receiving any renewal notices.

Washington Mutual ("WMU") is the mortgagee.[1] WMU states that because it received Homesite's notice of cancellation effective January 15, 2006, it cancelled the scheduled premium. See WMU Ltr. Attached to Pl. State. of Mat. Facts.  WMU states that it received a purported renewal policy from Homesite on February 28, 2006- the offer Homesite states it sent to Coney and that she denies receiving.  Id.  However, the "renewal" WMU received was actually the previous years's policy- for 2006-2007.  Id.

Unsure of the status of insurance for the dwelling, WMU sent Coney two notices advising that it did not have proof of insurance and that failure to provide such proof

---

[1] In a letter date December 29, 2006 (after the loss had been reported), WMU attempts to explain the chain of events that lead to Coney's lack of insured status.

would result in a lender initiated policy; WMU asserts that these notices were sent on January 24, 2006 and February 16, 2006. Id.  In March 2006, WMU initiated a lender-based policy and disbursed the premium for this policy from Coney's escrow account. Id.

On April 11, 2006, Coney sustained damage to her real and personal property from a chemical exposure.  What happens next is somewhat confusing.  On May 20, 2006, Homesite, with no claim yet filed by Coney for her loss, sent a letter to Coney cancelling the renewal policy due to lack of response. Def. Ex. C.  In July, 2006, Coney and her "agent" contacted WMU to discuss the Homesite cancellation.  Coney, later advised WMU that she was not living on the subject property, that she had sustained a loss, and that she had not filed a claim with the lender initiated insurance company.

Homesite had been willing to reinstate the policy provided Coney sign a no loss statement.  On August 21, 2006, WMU disbursed a premium payment to Homesite to reinstate the policy.  But then Coney reported the claim by telephone to Homesite, on August 23, 2006.  Shortly thereafter, on August 29, 2006, Homesite cancelled the policy (again) and refunded the premium.  On September 11, 2006, Homesite sent a letter to Coney denying coverage for the claim. Def. Ex. E.  Homesite rejected the claim on two grounds: 1) that Plaintiff failed to renew her policy causing the Homesite policy not to be in effect at the time of the loss, and; 2) that the loss fell within the total pollution exclusion.[2]  Consequently, WMU re-instituted the lender-placed policy.

Plaintiff instituted the present action in the New Jersey Superior Court, Law Division, Camden County on April 10, 2008.  Defendants removed the matter to this

---

[2] Whether the loss fell within the pollution exclusion has not been raised on summary judgment.

Court on December 15, 2008.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the

4

moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

Plaintiff seeks a declaration that the Homesite policy was in effect at the time of her loss. Plaintiff's argument is paradoxical; although she desires coverage for her loss and the protection of the policy, she argues that she should not be bound by its terms. Assuming that the policy was in effect at the time of the loss, the issue before the Court is whether Plaintiff had notice of the terms of the policy and is, therefore, precluded from recovery for failure to adhere to the one year limitation on suit condition.[3]

---

[3] There appears to be a genuine issue of fact as to whether the policy was in effect at the time of the loss. The Court will analyze Homesite's summary judgment motion assuming, without deciding, that the policy was in effect at the time of the loss.

The policy provision "suit against us" unambiguously states there is a one year limitation on bringing suit against the insurance company. See Conditions I subsection (8) in AIG Homeowners Policy. As it was stated in the 2005-2006 policy, the provision in the renewal for 2006-2007 reads "all information and representations herein are subject to the policy terms and conditions."

In opposition to summary judgment, Plaintiff states that she did not receive the policies for January 2005-2006 and January 2006-2007 and that theses "policies were most likely generated for the purposes of this litigation and were never provided to Plaintiff." Pl. Opp. Br., p. 7. Then Plaintiff argues simply that because the Court is bound to view the evidence in a light most favorable to Plaintiff, summary judgment is inappropriate because there is a factual question related to whether Plaintiff was on notice of the limitation. On a motion for summary judgment, "[u]nsupported allegations in memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bank Corporation, 912 F.2d 654, 657 (3d Cir. 1990). Without more, Plaintiff fails to meet her burden.

Moreover, even if the Court were to lend credence to Plaintiff's unsupported averment, her claim that she did not receive a copy of her policy does not nullify the provisions of the policy or abrogate their applicability. See Friscia v. Andrade, 2009 WL 3416058, *5 (N.J. App. Div., Oct. 9, 2009). Although an unpublished decision by the New Jersey Appellate Division, the reasoning in Friscia is both persuasive and sound.[4] Friscia involved the same defendant in the present matter. In that case, the plaintiff

---

[4] Because jurisdiction in this case is predicated upon diversity of citizenship, New Jersey state substantive law applies. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996); Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

received a "renewal declarations" for from defendant Homesite, but never received an actual copy of the policy.  2009 WL 3416058 at *1.  The renewal declaration form alerted plaintiff that his policy contained additional terms and conditions and directed him to read his policy; plaintiff never requested a copy of the policy.  Id.  Soon after plaintiff renewed his policy, he suffered a loss and filed a claim.  Over the course of the three month investigation into the claim, Homesite sent plaintiff four letters in which it referenced additional policy conditions and exclusions contained in the insurance contract.  Id.  Homesite then denied the claim on April 25, 2006.

Like the policy at issue here, the Friscia policy contained a one year limitation on suit condition.  Plaintiff waited nearly two years after the date of his loss to file suit against Homesite. Id. at *2.  Homesite moved for summary judgement, asserting that the suit was prohibited by the limitation period.  Id.  In opposition to the motion, plaintiff averred that he never received a copy of the insurance policy and, therefore, was not on notice of the limitation provision.  Id.  The trial court enforced the limitation provision and granted summary judgment.  Plaintiff appealed.

Noting that policy holders are duty-bound to read their insurance contracts, the court upheld the grant of summary judgment.  Id. at *3 (citing Sears Mortgage Co. v. Rose, 134 N.J. 326, 348 (1993)).  In so doing the court acknowledged that insurance companies are required to provide their insureds with a copy of the policy.  Id.  Nonetheless, the court reasoned that if it were "to accept plaintiff's contention that anyone who claims not to have received a copy of an insurance policy is thereby-without more- absolved of any responsibility for complying with its terms, no insurance company could ever enforce those provisions." Id.

Arguably, Coney found herself as an uninsured through no fault of her own; Homesite admits that it erroneously cancelled her policy. Coney was also caught in the middle of a transition between AIG and Homesite, that had unfortunate consequences for her insured status. Inasmuch as Homesite may have triggered the confusion and uncertainty that followed, Coney must do more than baldy assert that she did not receive a copy of the policy. Like the plaintiff in Friscia, Coney never asked for a copy of her insurance policy. In addition, she received several correspondences from Homesite that notified her that the notifications did not constitute the entire insurance contract and directed her to read the "policy contract and amendments carefully." See May Supp. Cert., Ex. A (Letter dated Nov. 18, 2004 attaching the new policy for 2005-2006); see also May Supp. Cert., Ex. B (Letter dated Feb. 28, 2006 enclosing policy renewal documents and advising in "Important Messages" section that the declarations contained in the notice did not constitute the entire policy). For these reasons the present situation is analogous to Friscia and the Court will enforce the limitation on suit provision of the insurance policy. Summary judgment is granted.

## IV. CONCLUSION

There is no genuine issue of fact as to whether Coney had notice of the one year limitation on suit provision contained in her homeowner's insurance policy. Coney waited nearly two years after the date of her reported loss to institute this action. As a result, her suit is time barred under the provisions of the policy and summary judgment is granted.

An appropriate Order shall issue.

Dated: July 15, 2010

/s/ Joseph H. Rodriguez
Honorable Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE